# EXHIBIT A



App. 1

Beau Hearn  *  January 18, 2022

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BEAU HEARN,                    )
                               )
                               )
          PLAINTIFF,           )
                               )
VS.                            ) CIVIL ACTION
                               )
                               ) NO.: 3:21-CV-01648
KROGER, TEXAS, LP,             )
                               )
                               )
                               )
          DEFENDANT.           )
                               )

------------------------------------

ORAL DEPOSITION OF

BEAU HEARN

January 18, 2022

------------------------------------

ORAL DEPOSITION OF BEAU HEARN, produced as a

witness at the instance of the DEFENDANT, and duly

sworn, was taken in the above-styled and numbered cause

on the 18th of January, 2022, from 9:37 a.m. to 10:54

a.m., before Mary Karen Usher, CSR in and for the State

of Texas, reported by machine shorthand via

videoconference, pursuant to the Federal Rules of Civil

Procedure.

 ORIGINAL

Usher Reporting Services
(214) 755-1612

App. 2

Beau Hearn  *  January 18, 2022

Page 2

```
 1                     A P P E A R A N C E S
                  (All parties appeared remotely)
 2

 3

      FOR THE PLAINTIFF:
 4
            MR. AUSTIN HARTLEY
 5          Hartley Law Firm
            2340 East Trinity Mills Road
 6          Suite 100
            Carrollton, Texas 75006
 7          (469) 289-6063
            austin@hartleylawtx.com
 8

 9    FOR THE DEFENDANT KROGER, TEXAS, LP:

10          MR. MICHAEL STUMBAUGH
            MS. REBECCAH TEJADA
11          The Peavler Group
            2215 Westgate Plaza
12          Grapevine, Texas 76051
            (214) 999-0550
13          mstumbaugh@peavlerbriscoe.com

14

15

16

17

18

19

20

21

22

23

24

25
```

Usher Reporting Services
(214) 755-1612

App. 3

Beau Hearn  *  January 18, 2022

Page 3

1                          INDEX
                                              PAGE
2  Appearances......................................... 2

3

4  BEAU HEARN

5      EXAMINATION BY MR. STUMBAUGH.................... 4

6

7                         EXHIBITS

8                         (NONE)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

App. 4

Beau Hearn  *  January 18, 2022

Page 4

1                    P R O C E E D I N G S
2       (All parties present have hereby waived the necessity of
3          the reading of the statements by the court reporter
4                      according to Rule 30(b)5.)
5                      MR. HARTLEY:  Pursuant to the Rules.
6                      MR. STUMBAUGH:  Sure.
7                          BEAU HEARN,
8       having been first duly sworn, testified as follows:
9                          EXAMINATION
10      BY MR. STUMBAUGH:
11          Q.   Mr. Hearn, my name is Mike Stumbaugh, and I
12      represent Kroger in a lawsuit that you have brought
13      against them.
14                      Do you understand who I am and who I
15      represent?
16          A.   Yes.
17          Q.   We are here today to talk about an incident
18      that occurred on June 15th, 2020 at -- at the Kroger
19      store at 536 Centennial Boulevard in Richardson.  If I
20      refer to it as "the incident," can we agree that that's
21      what I'm talking about?
22          A.   Yes, that's fine.
23          Q.   And if I refer to it as "the store," can we
24      agree that I'm talking about the Centennial Boulevard
25      store?

Beau Hearn  *  January 18, 2022

Page 12

1       A.   We lived there seven years.

2       Q.   Where did you go to high school?

3       A.   Last one was American High in Fremont,

4    California.

5       Q.   Did you graduate from high school?

6       A.   No.

7       Q.   Did you get a GED?

8       A.   Yes.

9       Q.   When did you get your GED?

10      A.   I don't remember.

11      Q.   Have you taken any college courses?

12      A.   No.

13      Q.   Are you currently employed at Kroger?

14      A.   Yes.

15      Q.   How long have you worked at Kroger?

16      A.   Going on two years.

17      Q.   What is your position there?

18      A.   Fuel clerk.

19      Q.   What do you do as a fuel clerk?

20      A.   I help people when they have -- excuse me.

21              I sell gas, cigarettes, and set pumps up

22   so people can purchase gas.

23      Q.   Prior to working at Kroger, where did you

24   work?

25      A.   I was disabled for seven years before that.

Beau Hearn   *   January 18, 2022

Page 19

1    and that's all I've been doing, Mike.  I'm not --

2                  MR. STUMBAUGH:  So you're saying that

3    we're taking these under the -- under the federal Rules?

4    It was my mistake.  I thought that you had said that we

5    were going to be -- you just said "under the rules," and

6    I foolishly thought that that meant that we were going

7    to be taking them under the state Rules.  I'm fine with

8    that.

9                  MR. HARTLEY:  Under the -- it's in

10   federal court, under the federal Rules.

11                 MR. STUMBAUGH:  Okay.  And that is just

12   fine.  I just --

13                 MR. HARTLEY:  Okay.

14                 MR. STUMBAUGH:  It was my error.

15        Q.   (BY MR. STUMBAUGH)  Were you trained to not

16   use a stool when interacting with customers?

17        A.   Yes.

18        Q.   You were trained to not use your stool?

19        A.   Yes.

20        Q.   All right.  So I'm a little confused because

21   it's my understanding that you said that you weren't

22   told to -- you were never told to not use a stool, but

23   you were trained not to use a stool?

24        A.   They told me use a stool when I needed to sit

25   down, but I had to be up and in person with the

Beau Hearn  *  January 18, 2022

Page 20

1    customers.

2        Q.   What was wrong with the stool?

3        A.   It was missing a support.

4        Q.   How do you know what was wrong with the stool?

5        A.   It was broken prior to me starting there.

6        Q.   How do you know that?

7        A.   The first day I was there, it was obvious that

8    it was broken.

9        Q.   How was it obvious?

10       A.   There were weld marks where a brace should

11   have been.

12       Q.   Does that mean that you examined the stool?

13       A.   Yes.

14       Q.   Do you know how long the stool was missing a

15   brace?

16       A.   No, I do not.

17       Q.   How long had you been working -- how many

18   months had you been working at Kroger prior to the stool

19   collapsing?

20       A.   Would have been a little over -- not quite a

21   year.

22       Q.   So the stool had been missing a brace for at

23   least almost a year; is that correct?

24       A.   Yes.

25       Q.   Did anyone tell you that the stool was missing

Beau Hearn   *   January 18, 2022

Page 21

1   a brace?

2       A.   No.

3       Q.   Did anyone tell you that the stool was broken

4   or defective?

5       A.   No.

6       Q.   Did you report that the stool was broken or

7   defective?

8       A.   Yes.

9       Q.   Who did you report it to?

10      A.   I reported it to the fuel lead.  I reported it

11  to all three assistant managers -- or managers at the

12  time.

13      Q.   Who is the fuel lead that you reported the

14  stool to?

15      A.   Pamela Compton.

16      Q.   And who were the managers you reported the

17  stool to?

18      A.   There was Taylor Wade, Terry Taylor and Scoey

19  Cash.

20           THE REPORTER:  I'm sorry.  The third name?

21           THE WITNESS:  Scoey Cash, S-C-O-E-Y.

22           THE REPORTER:  Got it.  Thank you.

23      Q.   (BY MR. STUMBAUGH)  When did you report the

24  stool to Pamela Compton?

25      A.   First week I was there.

Beau Hearn   *   January 18, 2022

Page 22

1    Q.    Did you ever report it again to her?

2    A.    Multiple times.

3    Q.    What did she say when you reported it?

4    A.    She would get -- let management know.

5    Q.    When did you report the stool to the three

6    managers?

7    A.    I don't remember.

8    Q.    What did Taylor Wade say to you when you

9    reported it to him?

10   A.    He would see about getting it replaced.

11   Q.    What did Terry Taylor say to you?

12   A.    They all said the same thing, they would see

13   about getting it replaced.

14   Q.    Was anyone around when the stool collapsed?

15   A.    No.

16   Q.    Describe how you fell.  And what I'm trying to

17   do is I'm just trying to figure out, you know, what body

18   part landed on the ground first.

19   A.    I couldn't really tell you.  I started to

20   fall, and that's -- I was on the ground the next thing I

21   knew.

22   Q.    Did your clothes get torn during the incident?

23   A.    No.

24   Q.    Did you hit anything in the room?  I'm talking

25   about -- you know, I've been in there; it's fairly

Beau Hearn  *  January 18, 2022

Page 23

1    close.  Any shelving, anything like that that you hit?

2        A.    I don't remember.

3        Q.    How long were you on the floor after you fell?

4        A.    30 seconds, 45 seconds.

5        Q.    Do you have Shoes For Crews?

6        A.    Don't understand.

7        Q.    Do you have slip-resistant shoes?

8        A.    Yes.

9        Q.    Were you wearing slip-resistant shoes on the

10   day of the incident?

11       A.    Yes.

12       Q.    Do you know of anyone -- are you aware of

13   anyone that saw the stool was defective or broken before

14   the incident?

15       A.    Yes.

16       Q.    Who were those people?

17       A.    Pamela Compton.

18       Q.    Anybody else?

19       A.    Carl -- I do not know his last name.  Anybody

20   that worked in the fuel kiosk knew it was defective.

21       Q.    Do you have any personal knowledge of the last

22   time the stool was inspected?

23       A.    No, I do not.

24       Q.    Has anyone told you when the stool was last

25   inspected?

Beau Hearn  *  January 18, 2022

Page 27

1     A.    No, my brother picked me up.

2     Q.    What kind of car do you drive?

3     A.    Dodge Dakota pickup.

4     Q.    What year?

5     A.    2004.

6     Q.    When you went back to work after you were

7  released, did you miss any other work?

8     A.    No.

9     Q.    So you have missed one week of work

10  attributable to the incident at Kroger.  Is there any

11  more time missed that you attribute to the incident?

12     A.    No.

13     Q.    Do you contend that the incident occurred

14  because Kroger did not adequately train you?

15     A.    No.

16     Q.    Do you require -- scratch that.

17              Do you require an accommodation for your

18  disability?

19     A.    Yes.

20     Q.    What accommodation do you require?

21     A.    Being able to sit when I can.

22     Q.    Was Kroger aware of your need for that

23  accommodation?

24     A.    Yes.

25     Q.    Was that accommodation -- was that need for

Beau Hearn  *  January 18, 2022

Page 28

1   the accommodation ever put into writing?

2       A.   No.

3       Q.   Other than the stool, are there any other

4   places to sit in the kiosk?

5       A.   Yes.

6       Q.   Where else can you sit in the kiosk?

7       A.   The little office cubicle in the back.

8       Q.   And what kind of a -- what can you sit on

9   there?

10      A.   There is a broken desk chair there.

11      Q.   And how is it broken?

12      A.   The wheels are broken and the -- you can't

13  lean back in it otherwise it will fall over on you.

14      Q.   Who at Kroger was aware of your need for an

15  accommodation?

16      A.   Scoey Cash.

17      Q.   Anybody else?

18      A.   Not that I'm aware of.

19      Q.   And how did he know about your need for an

20  accommodation?

21      A.   He was the one who performed my interview, and

22  it was brought up at that time.

23      Q.   Prior to the incident, had you ever sat on the

24  stool before?

25      A.   Yes.

Usher Reporting Services
(214) 755-1612

App. 13

Beau Hearn  *  January 18, 2022

Page 46

```
1                IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
2                        DALLAS DIVISION

3      BEAU HEARN,                  )
                                    )
4                                   )
                  PLAINTIFF,        )
5                                   )
       VS.                          )  CIVIL ACTION
6                                   )
                                    )  NO.: 3:21-CV-01648
7      KROGER, TEXAS, LP,           )
                                    )
8                                   )
                                    )
9                  DEFENDANT.       )
                                    )
10

11                   REPORTER'S CERTIFICATION

12                  DEPOSITION OF BEAU HEARN

13                      January 18, 2022

14

15          I, Karen Usher, Certified Shorthand Reporter in and

16    for the State of Texas, hereby certify to the following:

17          That the witness, BEAU HEARN, was duly sworn by the

18    officer and that the transcript of the oral deposition

19    is a true record of the testimony given by the witness;

20          I further certify pursuant to FRCP Rule 30 (e)(1)

21    that the signature of the deponent:

22          _X_ was requested by the deponent or a party

23    before the completion of the deposition and that the

24    signature is to be before any notary public and returned

25    within 30 days from date of receipt of the transcript.
```

Usher Reporting Services
(214) 755-1612

App. 14

Beau Hearn   *   January 18, 2022

Page 47

1   If returned, the attached Changes and Signature Page

2   contains any changes and the reasons therefore;

3   _____ was not requested by the deponent or a

4   party before the completion of the deposition.

5       That the amount of time used by each party at the

6   deposition is as follows:

7           MR. MIKE STUMBAUGH.....1 HOUR:09 MINUTES

8           MR. AUSTIN HARTLEY.....00 HOUR(S):00 MINUTE(S)

9

10      That pursuant to information given to the

11  deposition officer at the time said testimony was taken,

12  the following includes counsel for all parties of

13  record:

14      FOR THE PLAINTIFF:
        MR. AUSTIN HARTLEY
15      Hartley Law Firm
        2340 East Trinity Mills Road
16      Suite 100
        Carrollton, Texas 75006
17      (469) 289-6063
        austin@hartleylawtx.com
18

19      FOR THE DEFENDANT KROGER, TEXAS, LP:
        MR. MICHAEL STUMBAUGH
20      MS. REBECCAH TEJADA
        The Peavler Group
21      2215 Westgate Plaza
        Grapevine, Texas 76051
22      (214) 999-0550
        mstumbaugh@peavlerbriscoe.com
23

24      That $_____ is the deposition officer's

25  charges to the Defendant for preparing the original

Usher Reporting Services
(214) 755-1612

App. 15

Beau Hearn  *  January 18, 2022

Page 48

1  deposition transcript and any copies of exhibits;

2      I further certify that I am neither counsel for,

3  related to, nor employed by any of the parties or

4  attorneys in the action in which this proceeding was

5  taken, and further that I am not financially or

6  otherwise interested in the outcome of the action.

7      Certified to by me this 6th of February, 2022.

8

9

10  _____

11  MARY KAREN USHER, CSR # 5538
    Expiration: 1/31/2024
12  Firm Registration # 10278
    USHER REPORTING SERVICES
13  1326 Lochness Drive
    Allen, Texas 75013
14  (214) 755-1612
    karen@usherreporting.com

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT B



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BEAU HEARN | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 3:21-cv-01648 |
| | § | |
| KROGER TEXAS LP, | § | |
| | § | |
| Defendant. | § | |

## AFFIDAVIT OF BEAU HEARN

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

On this day, Beau Hearn, appeared before me, the undersigned notary public, and after I administered an oath to him, upon his oath, he stated:

"My name is Beau Hearn. I am over 21 years of age and capable of making this affidavit. All of my statements herein are true, correct and they are within my personal knowledge.

1. On or about June 15, 2020, I was employed as a fuel kiosk attendant for Kroger Texas, L.P., Store Number 526, located at 526 Centennial Blvd, Richardson, TX 75081.

2. I was officially hired as a fuel clerk March 3, 2020 after completing an interview process with Kroger Texas, L.P. Interviewer / Hiring Manager Scoey Cash that occurred on February 25, 2020.

3. Kroger was aware that due to medical issues concerning my back, and that I would not be able to stand for extended periods of time, I would need to be allowed to sit intermittently in order to perform my employment duties.

4. Scoey Cash informed me during my interview that sitting while customers were not present at the fuel kiosk would not raise an issue with my employment and that the subject stool was located in the fuel kiosk that I would be able use to during my employment. I understood this to mean that Kroger would accommodate my medical restrictions.

AFFIDAVIT OF BEAU HEARN

Page 1 of 2

5.  When I arrived on my first day of work at Kroger Texas, L.P., the subject stool was already in the fuel kiosk at the front window where I was to perform my employment duties. The only alternative place to sit was another chair at a separate computer station and away from the front window that was unsafe to use.

6.  Other than myself, other employees who worked in the fuel kiosk commonly used the stool during the course and scope of their employment.

7.  The only policy or procedure that I was informed of regarding sitting while in the course and scope of my employment was that Kroger employees could not sit while attending to a customer.

8.  On or about June 15, 2020, I was sitting on the provided stool when it collapsed under me, causing me to sustain injuries that are the basis of this current lawsuit. There were no customers present at the time the stool collapsed.

9.  On multiple occasions, Kroger was aware of the defective nature of the subject stool because the legs of the stool where the center brace had broken off were sharp, and I was concerned that I would be cut on my legs.

Further Affiant sayeth not."

_____
Beau Hearn

SWORN TO and SUBSCRIBED before me on the **19** day of May 2022.

_____
NOTARY PUBLIC, STATE OF TEXAS

> JOHN SETH REEVES MADDEN
> Notary Public, State of Texas
> Comm. Expires 01-03-2026
> Notary ID 133510468

**AFFIDAVIT OF BEAU HEARN**                                        Page 2 of 2

# EXHIBIT C



App. 20

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BEAU HEARN, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.3:21-cv-01648 |
| | § | |
| KROGER TEXAS, L.P. | § | JURY DEMANDED |
| Defendant. | § | |

---

### DEFENDANT'S RESPONSES TO PLAINTIFF'S INTERROGATORIES

---

To:     Plaintiff, Beau Hearn, by and through his attorney of record, Austin F. Hartley, Hartley Law
        Firm , 2340 E. Trinity Mills Rd., Ste 100, Carrolton, Texas 75006 and Tom Carse, Carse Law
        Firm, 6220 Campbell Road, Ste 401, Dallas, TX 75248.

        Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant makes and serves

these Responses to Plaintiff's Interrogatories.

                                     Respectfully submitted,

                                     /s/ Michael W. Stumbaugh
                                     _____
                                     **B. Kyle Briscoe**
                                     Attorney - in - charge
                                     State Bar No. 24069421
                                     kbriscoe@peavlerbriscoe.com
                                     **Michael W. Stumbaugh**
                                     State Bar No. 24041987
                                     mstumbaugh@peavlerbriscoe.com
                                     **Rebeccah D. Tejada**
                                     State Bar No. 24097174
                                     rtejada@peavlerbriscoe.com
                                     **PEAVLER | BRISCOE**
                                     2215 Westgate Plaza
                                     Grapevine, Texas 76051
                                     214 - 999 - 0550 (telephone)
                                     214 - 999 - 0551 (fax)

                                     **ATTORNEYS FOR DEFENDANT**

---

PrimaCare Medical Centers
P.O. Box 205650
Dallas, TX 75320
Amounts Paid:$561.21

Baylor Scott & White
510 N Coit Road, Suite 2035
Richardson, TX 75080
Amounts Paid:$5,404.82

OrthoTexas Physicians and Surgeons, PLLC
4780 N. Josey Lane
Carrollton, TX 75010
Amounts Paid:$492.90

**REQUEST NO. 7:**      **Identify all documents setting forth Plaintiff's violation of any of your policies, procedures, regulations, and work rules in effect as of the date of the incident made the basis of this lawsuit, which you contend and/or reasonably believe supports your contention that the violation was the sole proximate cause of Plaintiff's injuries and damages.**

**RESPONSE:**    None.

**REQUEST NO. 8:**      **Identify the name, address and telephone number of each witness you will call to testify at trial.**

**RESPONSE:**    Defendant objects to this Interrogatory as exceeding the scope of permissible discovery, inasmuch as a party is not allowed to request copies of the other party's trial exhibits and witness list in discovery. *See Texas Tech Univ. Health Sci. Ctr. v. Shild*, 828 S.W.2d 502, 504 (Tex. App.—El Paso 1992, orig. proceeding).

Subject to and without waiving the foregoing objection, Defendant will identify its witness list at the time and in the manner prescribed by the Court's scheduling order and the Federal Rules of Civil Procedure.

# EXHIBIT D



Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BEAU HEARN,                   )
                              )
              Plaintiff,      )
                              )
VS.                           ) CIVIL ACTION
                              )
KROGER TEXAS, LP,             ) NO. 3:21-CV-1648-D
                              )
              Defendant.      )

------------------------------------

ORAL DEPOSITION OF

TERRY TAYLOR

February 22, 2022

VOLUME 1

------------------------------------

ORAL DEPOSITION OF TERRY TAYLOR, produced as a

witness at the instance of the Plaintiff, and duly

sworn, was taken in the above-styled and numbered cause

on February 22, 2022, from 3:13 p.m. to 4:41 p.m.,

before Elizabeth Goodenough, CSR in and for the State of

Texas, reported by machine shorthand, located in

Duncanville, Texas, pursuant to the Federal Rules of

Civil Procedure.

GOODENOUGH & ASSOCIATES   (817) 261-9095

TERRY TAYLOR      02/22/2022

Page 2

1                    A P P E A R A N C E S

2    FOR THE PLAINTIFF:

3         AUSTIN F. HARTLEY
          Hartley Law Firm
4         2340 East Trinity Mills Road
          Suite 100
5         Carrollton,Texas 75006
          Phone: (972) 478-4353
6         Fax:(972) 692-7122
          Austin@hartleylawtx.com

7

8    FOR THE DEFENDANT:

9         MIKE STUMBAUGH
          Peavler Briscoe
10        2215 Westgate Plaza
          Grapevine, Texas 76051
11        Phone:(214) 999-0550
          Fax:(214) 999-0551
12        Mikestumbaugh@peavlerbriscoe.com

13

14

15

16

17

18

19

20

21

22

23

24

25

GOODENOUGH & ASSOCIATES    (817) 261-9095

TERRY TAYLOR      02/22/2022

Page 3

```
 1                        INDEX

 2                                                PAGE

 3   Appearances........................................  2

 4   Stipulations...................................... 61

 5   TERRY TAYLOR

 6       Examination by Mr. Hartley....................  4

 7   Signature and Changes............................. 62

 8   Reporter's Certificate............................ 64

 9
                         EXHIBITS
10
     NO.  DESCRIPTION                               PAGE
11
     1    Photo of stool                              21
12   2    Employer's First Report of Injury or Illness   42

13

14              REQUESTED DOCUMENTS/INFORMATION

15                         (NONE)

16

17                   CERTIFIED QUESTIONS

18                         (NONE)

19

20

21

22

23

24

25
```

GOODENOUGH & ASSOCIATES    (817) 261-9095

App. 26

TERRY TAYLOR     02/22/2022

Page 4

```
 1                P R O C E E D I N G S
 2              THE REPORTER:  Today's date is
 3   February 22, 2022.  The time is 3:13 p.m.  This is the
 4   oral deposition of Terry Taylor, and it is being
 5   conducted remotely.  The witness is located in
 6   Duncanville, Texas.
 7              My name is Elizabeth Goodenough, CSR
 8   Number 3055.  I am administering the oath and reporting
 9   the deposition remotely by stenographic means within the
10   state of Texas.
11              Would counsel please state their
12   appearances and locations for the record?
13              MR. HARTLEY:  Austin Hartley for plaintiff,
14   Beau Hearn, in Dallas County, Texas.
15              MR. STUMBAUGH:  Mike Stumbaugh for Kroger.
16   And I am in Grapevine, Texas.
17                     TERRY TAYLOR,
18   having been first duly sworn, testified as follows:
19                     EXAMINATION
20   BY MR. HARTLEY:
21      Q.  Can you state your full legal name for the
22   record?
23      A.  Terry Taylor.
24      Q.  Mr. Taylor, do you have a middle name?
25      A.  Terry Lavon Taylor.
```

GOODENOUGH & ASSOCIATES    (817) 261-9095

TERRY TAYLOR      02/22/2022

Page 20

1      Q.   And you see the stools before the incident?

2      A.   Yes, sir.

3      Q.   And you're telling us that the fuel kiosk

4   clerks are not supposed to sit down, right?

5      A.   No, sir.

6      Q.   But you didn't do anything when you saw stools

7   in that fuel kiosk, did you?

8      A.   No, sir, I didn't.

9      Q.   You didn't -- prior to this incident when you

10   saw the stools, you didn't go up to Mr. Hearn or another

11   fuel clerk and say, Hey, you need to get these stools

12   out of here, that's against policies and procedures?

13      A.   No, sir, I didn't because it wasn't in the area

14   of the customer.

15      Q.   Okay.  So are they allowed to sit down or are

16   they not allowed to sit down only in the area of a

17   customer or not allowed to sit down at all?

18      A.   There's no verbiage in the union contract to

19   say they are not allowed to sit down, so I kind of gave

20   them the benefit of the doubt of if we should be -- if

21   there's a rule in place for me to take it out or not.

22      Q.   So you are not saying that they're not allowed

23   to, you're just -- and there's not a policy that

24   prohibits it.  You're just saying you would expect them

25   to use good judgment when serving customers as far as

GOODENOUGH & ASSOCIATES    (817) 261-9095

App. 28

TERRY TAYLOR        02/22/2022

Page 21

1    sitting down or not.  Fair?

2        A.  No.  The policy was if there's a customer --

3    there is a customer at the kiosk, they shouldn't be

4    sitting in the chair.

5        Q.  Otherwise, if there's not, they're okay to sit?

6        A.  I didn't okay it.  But I didn't frown upon it

7    either.

8        Q.  Have you ever sat in that stool that collapsed

9    on Mr. Hearn?

10       A.  No, sir.  I've never been there to sit down.

11   It's such a small area.  I'm pretty much in and out

12   every time I go there.

13       Q.  Prior to Mr. Hearn's incident -- well, let's do

14   this.  Describe the stool that Mr. Hearn -- that

15   collapsed under Mr. Hearn.  What color is it?

16       A.  I couldn't tell you that.  I don't honestly

17   remember.

18       Q.  Let me show you what I'm going to mark as

19   Exhibit 1.  Can you see this, Mr. Taylor?

20       A.  Yeah.  Can you -- I can see it.

21       Q.  I can zoom in.  It is a little far out.  Is

22   that better?

23       A.  Yeah, I saw it fine the first time.

24       Q.  Okay.  Is that the stool that you saw in the

25   fuel kiosk prior to Mr. Hearn's incident?

TERRY TAYLOR      02/22/2022

Page 24

1      Q.  Okay.

2      A.  But it may very well be one back there also now

3  that you mention it.  I'm not sure.  I don't remember.

4      Q.  The stool in question, the one -- I don't so

5  much care about the one by the computer in the back.

6  That's not the one that collapsed under Beau.  Okay?

7  The one up front where the customer glass is, where did

8  that stool come from?

9      A.  I honestly don't know.  I was only at the store

10  less than a year.  So wherever it came from -- it was

11  there when I got there, you know, previously.  After I

12  left --

13      Q.  And -- and so the stool was there in the gas --

14  in the fuel kiosk up by the customer glass when you

15  started at 526?

16      A.  Yes, sir.

17      Q.  Okay.  Did you ever -- have you ever asked

18  anybody, other managers or anything like that, where the

19  stool came from?

20      A.  No.

21      Q.  Okay.  Who was the store manager before you at

22  526?

23      A.  A lady named Liza Riley, I think, Liza.  It's

24  pronounced -- it's Liza Riley, something like that.

25      Q.  Okay.  You're not, like, personal friends with

GOODENOUGH & ASSOCIATES   (817) 261-9095

App. 30

TERRY TAYLOR       02/22/2022

Page 25

1    her or something outside of work, are you?

2        A.   I've never met her before.   They mentioned her

3    name here and there after she left.

4        Q.   What do they -- like -- you mean, like,

5    associates would?

6        A.   Yeah.   Yes, sir, like -- yes, sir, in passing.

7        Q.   Do you know why she left 526?

8        A.   No, sir, I honestly don't.

9        Q.   You agree that as a store manager, you are --

10   and I know -- I know other people are also responsible,

11   but you're the top of the totem pole when it comes to

12   responsibility for the equipment that's in the Kroger

13   store.   Fair?

14       A.   No, sir.   Like I said, it's a team effort.   In

15   other words, if we were to turn to somebody or point a

16   finger at somebody, yes, I am the face.   That's -- but

17   that's a shared responsibility.   I don't get a letter in

18   my file because somebody got hurt or something like

19   that.   It is a concerted effort across the board when it

20   comes to safety.   There's no one person in charge.   Like

21   I said, it's a team effort.

22       Q.   Prior to the incident with Mr. Hearn, had any

23   Kroger associate, assistant manager, any Kroger employee

24   at 526 asked for a new stool?

25       A.   Yes.   Pam, the fuel lead, asked me for one.

GOODENOUGH & ASSOCIATES    (817) 261-9095

App. 31

TERRY TAYLOR        02/22/2022

Page 26

1     Q.   And what did she say when she did that?

2     A.   At first, I told her I would get back with her

3   because I wanted to find out from my boss if we were

4   okaying that.

5     Q.   To buy -- I'm sorry to interrupt you.  To buy a

6   new stool you mean?

7     A.   Yes, sir, yes, sir.

8     Q.   Okay.  Tell me more about that conversation.

9     A.   Eventually, I ended up ordering one.  But it

10  was on back order.  That's when COVID first started.  So

11  a lot of stuff wasn't shipping out at that time.  And

12  that was -- that was the end of it.  That was -- that

13  was it.

14    Q.   When in -- how soon before -- or -- yeah, how

15  soon before Mr. Hearn's incident did Pam ask you to buy

16  a new stool?

17    A.   I don't remember, sir.

18    Q.   But it was before Mr. Hearn's incident,

19  correct?

20    A.   I think so.  Not sure.  But I think so.

21    Q.   Because -- I mean, you would agree after

22  Mr. Hearn's incident, the stool wasn't usable anymore,

23  right?

24    A.   I'm not sure about that either.

25    Q.   Okay.  Let me ask you this.

TERRY TAYLOR      02/22/2022

Page 28

1       A.   She just said it was worn.   She didn't go into

2   detail.   She just said, Can we get a new one?

3                I said, What's wrong with the one you have?

4                And she said, Nothing really.   It's just

5   old.

6                I was like, Okay.   Well, that's not really

7   a reason we need a new one.   But let me get with my boss

8   and find out if y'all be sitting down in the fuel center

9   and I'll get back with you.

10      Q.   Did you get with your boss?

11      A.   Yeah, I did.

12      Q.   What did -- and who's your boss?

13      A.   At the time, it was Preston Owens.

14      Q.   Can you spell that last name for me?

15      A.   O-w-e-n-s.

16      Q.   Oh, Owens.   Yeah, okay.   Does he no longer work

17  for Kroger?

18      A.   No.   He's still a district manager in the Delta

19  district.

20      Q.   He's just not your district manager?

21      A.   Right.   He got promoted out and I got promoted

22  out to a different district also.

23      Q.   What did Preston say when you spoke to him

24  about the stool?

25      A.   He just told me it didn't matter.   That's fine

GOODENOUGH & ASSOCIATES    (817) 261-9095

TERRY TAYLOR        02/22/2022

Page 29

1    if you want them to have one.

2        Q.  And Preston said, That's fine.  It didn't

3    matter even though it was your belief that they're not

4    really supposed to be sitting in the fuel kiosk up

5    there?

6        A.  Like I said, it wasn't an issue because --

7    they're only supposed to sit down in between customers.

8    But whenever a customer's at the window, they are

9    supposed to be standing up.  So like I said, I never

10   questioned the rule.  And it wasn't worth me chasing it.

11   So I didn't mind.

12       Q.  Okay.  I must have misunderstood your testimony

13   earlier.  Maybe I asked a bad question, which I'm sure I

14   will throughout today.

15           So is it accurate to say that the policy of

16   Kroger with respect to the fuel center customer window

17   is as follows:  Fuel associates are allowed to sit down

18   when there is not a customer present.  When there is,

19   they have to be standing up.  Is that accurate?

20       A.  Like I -- like I stated earlier, because I

21   remembered, I told them -- I didn't know whether there

22   was a policy.

23       Q.  Okay.

24       A.  And that I wasn't sure if there was one.  So I

25   said I wasn't going to go and chase it and, you know,

GOODENOUGH & ASSOCIATES    (817) 261-9095

App. 34

TERRY TAYLOR       02/22/2022

Page 62

```
 1                    CHANGES AND SIGNATURE

 2    WITNESS NAME:  TERRY TAYLOR

 3    DATE: FEBRUARY 22, 2022

 4    PAGE LINE        CHANGE              REASON

 5    _____

 6    _____

 7    _____

 8    _____

 9    _____

10    _____

11    _____

12    _____

13    _____

14    _____

15    _____

16    _____

17    _____

18    _____

19    _____

20    _____

21    _____

22    _____

23    _____

24    _____

25    _____
```

GOODENOUGH & ASSOCIATES    (817) 261-9095

TERRY TAYLOR     02/22/2022

Page 63

1          I, TERRY TAYLOR, have read the foregoing

2     deposition and hereby affix my signature that same is

3     true and correct, except as noted above.

4

5

6                    TERRY TAYLOR

7

8     THE STATE OF _____)

9     COUNTY OF _____)

10

11          Before me, _____, on

12    this day personally appeared TERRY TAYLOR, known to me

13    (or proved to me under oath or through

14    _____ (description of identity card or

15    other document) to be the person whose name is

16    subscribed to the foregoing instrument and acknowledged

17    to me that they executed the same for the purposes and

18    consideration therein expressed.

19          Given under my hand and seal of office this

20    _____ day of _____, _____.

21

22

23                    NOTARY PUBLIC IN AND FOR
                      THE STATE OF _____

24                    COMMISSION EXPIRES: _____

25

GOODENOUGH & ASSOCIATES    (817) 261-9095

TERRY TAYLOR     02/22/2022

Page 64

1   STATE OF TEXAS          X

2   COUNTY OF TARRANT       X

3           I, Elizabeth Goodenough, a Certified Shorthand

4   Reporter duly commissioned and qualified in and for the

5   State of Texas, do hereby certify that there came before

6   me on the 22nd day of February, 2022, located in the

7   City of Duncanville, County of Dallas, and State of

8   Texas, the following named person, to-wit:  TERRY

9   TAYLOR, who was duly sworn to testify the truth, the

10  whole truth and nothing but the truth of his knowledge

11  touching and concerning the matters in controversy in

12  this cause; and that he was thereupon examined upon his

13  oath and his examination reduced to typewriting under my

14  supervision; that the deposition is a true record of the

15  testimony given by the witness, and signature of witness

16  is to be before any notary public.

17          I further certify that I am neither attorney

18  or counsel for, nor related to or employed by any of the

19  parties to the action in which this deposition is taken,

20  and further that I am not a relative or employee of any

21  attorney or counsel employed by the parties hereto, or

22  financially interested in the action.

23

24

25

GOODENOUGH & ASSOCIATES    (817) 261-9095

App. 37

TERRY TAYLOR          02/22/2022

Page 65

```
1            IN WITNESS WHEREOF, I have hereunto set my

2    hand and affixed my notarial seal this the 2nd day of

3    March, 2022.

4

5

6

7             _____
              ELIZABETH GOODENOUGH, CSR 3055
              Goodenough & Associates
8             Firm Registration No. 400
              2012 Franklin Drive
9             Arlington, Texas  76011

10

11   My commission expires:  12-31-22

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

GOODENOUGH & ASSOCIATES    (817) 261-9095