# EXHIBIT A

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BEAU HEARN,                      )
                                 )
                                 )
            PLAINTIFF,           )
                                 )
VS.                              ) CIVIL ACTION
                                 )
                                 ) NO.: 3:21-CV-01648
KROGER, TEXAS, LP,               )
                                 )
                                 )
                                 )
            DEFENDANT.           )
                                 )


---------------------------------

ORAL DEPOSITION OF

BEAU HEARN

January 18, 2022

---------------------------------

ORAL DEPOSITION OF BEAU HEARN, produced as a
witness at the instance of the DEFENDANT, and duly
sworn, was taken in the above-styled and numbered cause
on the 18th of January, 2022, from 9:37 a.m. to 10:54
a.m., before Mary Karen Usher, CSR in and for the State
of Texas, reported by machine shorthand via
videoconference, pursuant to the Federal Rules of Civil
Procedure.

App. 2

Page 2

 1                    A P P E A R A N C E S
                (All parties appeared remotely)
 2

 3

   FOR THE PLAINTIFF:
 4
        MR. AUSTIN HARTLEY
 5      Hartley Law Firm
        2340 East Trinity Mills Road
 6      Suite 100
        Carrollton, Texas 75006
 7      (469) 289-6063
        austin@hartleylawtx.com
 8

 9   FOR THE DEFENDANT KROGER, TEXAS, LP:

10      MR. MICHAEL STUMBAUGH
        MS. REBECCAH TEJADA
11      The Peavler Group
        2215 Westgate Plaza
12      Grapevine, Texas 76051
        (214) 999-0550
13      mstumbaugh@peavlerbriscoe.com

14

15

16

17

18

19

20

21

22

23

24

25

App. 3

Beau Hearn  *  January 18, 2022

```
                                                    Page 3
  1                        INDEX
                                                   PAGE
  2  Appearances........................................  2

  3

  4  BEAU HEARN

  5      EXAMINATION BY MR. STUMBAUGH...................  4

  6

  7                      EXHIBITS

  8                       (NONE)

  9

 10

 11

 12

 13

 14

 15

 16

 17

 18

 19

 20

 21

 22

 23

 24

 25
```

**App. 4**

Beau Hearn  *  January 18, 2022

Page 4

1                    P R O C E E D I N G S

2    (All parties present have hereby waived the necessity of

3       the reading of the statements by the court reporter

4                    according to Rule 30(b)5.)

5                    MR. HARTLEY:  Pursuant to the Rules.

6                    MR. STUMBAUGH:  Sure.

7                         BEAU HEARN,

8    having been first duly sworn, testified as follows:

9                         EXAMINATION

10   BY MR. STUMBAUGH:

11        Q.   Mr. Hearn, my name is Mike Stumbaugh, and I

12   represent Kroger in a lawsuit that you have brought

13   against them.

14             Do you understand who I am and who I

15   represent?

16        A.   Yes.

17        Q.   We are here today to talk about an incident

18   that occurred on June 15th, 2020 at -- at the Kroger

19   store at 536 Centennial Boulevard in Richardson.  If I

20   refer to it as "the incident," can we agree that that's

21   what I'm talking about?

22        A.   Yes, that's fine.

23        Q.   And if I refer to it as "the store," can we

24   agree that I'm talking about the Centennial Boulevard

25   store?

Beau Hearn  *  January 18, 2022

Page 16

1   can go ahead and answer, Beau.

2        A.   No, I have not.

3        Q.   (BY MR. STUMBAUGH)  Have you ever been

4   convicted of a crime?

5             MR. HARTLEY:  Same objection.  You can go

6   ahead and answer, Beau.

7        A.   No.

8        Q.   (BY MR. STUMBAUGH)  Do you remember the day of

9   the week that the incident occurred?

10        A.   No, I do not.

11        Q.   What time of day did it happen?

12        A.   Approximately 7:30 at night.

13        Q.   What was your shift that day?

14        A.   I was the closing person working until 10:00.

15        Q.   What time do you start a closing shift?

16        A.   That would have been about 3:00 o'clock.

17        Q.   Where did the incident occur?

18        A.   Inside the fuel kiosk.

19        Q.   Were you taking any type of medication that

20   day?

21        A.   No.

22        Q.   What were you doing when the incident

23   occurred?

24        A.   Eating my lunch.

25        Q.   When you are having lunch, are you on the

Beau Hearn  *  January 18, 2022

Page 17

1    clock or off the clock?

2        A.   On the clock.

3        Q.   Do you get an actual lunch break, or do you

4   just have to find -- eat lunch when you can?

5        A.   When I can, no break.

6        Q.   Were you talking on your cell phone at the

7   time of the incident?

8        A.   No.

9        Q.   When you fell, did you fall all the way to the

10  ground?

11       A.   Yes.

12       Q.   Did you require assistance after you fell?

13       A.   No.

14       Q.   Did anyone see the incident?

15       A.   No.

16       Q.   What made you fall?

17       A.   The stool collapsed.

18       Q.   Where was the stool in the kiosk?

19       A.   I don't understand.

20       Q.   Was it at the -- was it at the front window

21  where you would talk to customers?

22       A.   Yes.

23       Q.   Did you move the stool to the front window?

24       A.   No.

25       Q.   Have you ever been told that you are not

Beau Hearn  *  January 18, 2022

Page 19

1  and that's all I've been doing, Mike.  I'm not --

2                 MR. STUMBAUGH:  So you're saying that

3  we're taking these under the -- under the federal Rules?

4  It was my mistake.  I thought that you had said that we

5  were going to be -- you just said "under the rules," and

6  I foolishly thought that that meant that we were going

7  to be taking them under the state Rules.  I'm fine with

8  that.

9                 MR. HARTLEY:  Under the -- it's in

10  federal court, under the federal Rules.

11                 MR. STUMBAUGH:  Okay.  And that is just

12  fine.  I just --

13                 MR. HARTLEY:  Okay.

14                 MR. STUMBAUGH:  It was my error.

15      Q.   (BY MR. STUMBAUGH)  Were you trained to not

16  use a stool when interacting with customers?

17      A.   Yes.

18      Q.   You were trained to not use your stool?

19      A.   Yes.

20      Q.   All right.  So I'm a little confused because

21  it's my understanding that you said that you weren't

22  told to -- you were never told to not use a stool, but

23  you were trained not to use a stool?

24      A.   They told me use a stool when I needed to sit

25  down, but I had to be up and in person with the

App. 8

Beau Hearn  *  January 18, 2022

Page 20

1    customers.

2         Q.   What was wrong with the stool?

3         A.   It was missing a support.

4         Q.   How do you know what was wrong with the stool?

5         A.   It was broken prior to me starting there.

6         Q.   How do you know that?

7         A.   The first day I was there, it was obvious that

8    it was broken.

9         Q.   How was it obvious?

10        A.   There were weld marks where a brace should

11   have been.

12        Q.   Does that mean that you examined the stool?

13        A.   Yes.

14        Q.   Do you know how long the stool was missing a

15   brace?

16        A.   No, I do not.

17        Q.   How long had you been working -- how many

18   months had you been working at Kroger prior to the stool

19   collapsing?

20        A.   Would have been a little over -- not quite a

21   year.

22        Q.   So the stool had been missing a brace for at

23   least almost a year; is that correct?

24        A.   Yes.

25        Q.   Did anyone tell you that the stool was missing

Beau Hearn  *  January 18, 2022

Page 21

1  a brace?

2        A.   No.

3        Q.   Did anyone tell you that the stool was broken

4  or defective?

5        A.   No.

6        Q.   Did you report that the stool was broken or

7  defective?

8        A.   Yes.

9        Q.   Who did you report it to?

10        A.   I reported it to the fuel lead.  I reported it

11  to all three assistant managers -- or managers at the

12  time.

13        Q.   Who is the fuel lead that you reported the

14  stool to?

15        A.   Pamela Compton.

16        Q.   And who were the managers you reported the

17  stool to?

18        A.   There was Taylor Wade, Terry Taylor and Scoey

19  Cash.

20             THE REPORTER:  I'm sorry.  The third name?

21             THE WITNESS:  Scoey Cash, S-C-O-E-Y.

22             THE REPORTER:  Got it.  Thank you.

23        Q.   (BY MR. STUMBAUGH)  When did you report the

24  stool to Pamela Compton?

25        A.   First week I was there.

Beau Hearn  *  January 18, 2022

Page 22

1      Q.   Did you ever report it again to her?

2      A.   Multiple times.

3      Q.   What did she say when you reported it?

4      A.   She would get -- let management know.

5      Q.   When did you report the stool to the three

6   managers?

7      A.   I don't remember.

8      Q.   What did Taylor Wade say to you when you

9   reported it to him?

10     A.   He would see about getting it replaced.

11     Q.   What did Terry Taylor say to you?

12     A.   They all said the same thing, they would see

13   about getting it replaced.

14     Q.   Was anyone around when the stool collapsed?

15     A.   No.

16     Q.   Describe how you fell.  And what I'm trying to

17   do is I'm just trying to figure out, you know, what body

18   part landed on the ground first.

19     A.   I couldn't really tell you.  I started to

20   fall, and that's -- I was on the ground the next thing I

21   knew.

22     Q.   Did your clothes get torn during the incident?

23     A.   No.

24     Q.   Did you hit anything in the room?  I'm talking

25   about -- you know, I've been in there; it's fairly

Beau Hearn  *  January 18, 2022

Page 23

1    close.  Any shelving, anything like that that you hit?

2         A.    I don't remember.

3         Q.    How long were you on the floor after you fell?

4         A.    30 seconds, 45 seconds.

5         Q.    Do you have Shoes For Crews?

6         A.    Don't understand.

7         Q.    Do you have slip-resistant shoes?

8         A.    Yes.

9         Q.    Were you wearing slip-resistant shoes on the

10   day of the incident?

11        A.    Yes.

12        Q.    Do you know of anyone -- are you aware of

13   anyone that saw the stool was defective or broken before

14   the incident?

15        A.    Yes.

16        Q.    Who were those people?

17        A.    Pamela Compton.

18        Q.    Anybody else?

19        A.    Carl -- I do not know his last name.  Anybody

20   that worked in the fuel kiosk knew it was defective.

21        Q.    Do you have any personal knowledge of the last

22   time the stool was inspected?

23        A.    No, I do not.

24        Q.    Has anyone told you when the stool was last

25   inspected?

**App. 12**

Beau Hearn  *  January 18, 2022

Page 27

1       A.   No, my brother picked me up.

2       Q.   What kind of car do you drive?

3       A.   Dodge Dakota pickup.

4       Q.   What year?

5       A.   2004.

6       Q.   When you went back to work after you were

7   released, did you miss any other work?

8       A.   No.

9       Q.   So you have missed one week of work

10  attributable to the incident at Kroger.  Is there any

11  more time missed that you attribute to the incident?

12      A.   No.

13      Q.   Do you contend that the incident occurred

14  because Kroger did not adequately train you?

15      A.   No.

16      Q.   Do you require -- scratch that.

17           Do you require an accommodation for your

18  disability?

19      A.   Yes.

20      Q.   What accommodation do you require?

21      A.   Being able to sit when I can.

22      Q.   Was Kroger aware of your need for that

23  accommodation?

24      A.   Yes.

25      Q.   Was that accommodation -- was that need for

Beau Hearn  *  January 18, 2022

Page 28

1    the accommodation ever put into writing?

2          A.    No.

3          Q.    Other than the stool, are there any other

4    places to sit in the kiosk?

5          A.    Yes.

6          Q.    Where else can you sit in the kiosk?

7          A.    The little office cubicle in the back.

8          Q.    And what kind of a -- what can you sit on

9    there?

10          A.    There is a broken desk chair there.

11          Q.    And how is it broken?

12          A.    The wheels are broken and the -- you can't

13    lean back in it otherwise it will fall over on you.

14          Q.    Who at Kroger was aware of your need for an

15    accommodation?

16          A.    Scoey Cash.

17          Q.    Anybody else?

18          A.    Not that I'm aware of.

19          Q.    And how did he know about your need for an

20    accommodation?

21          A.    He was the one who performed my interview, and

22    it was brought up at that time.

23          Q.    Prior to the incident, had you ever sat on the

24    stool before?

25          A.    Yes.

Beau Hearn  *  January 18, 2022

Page 29

1    Q.    How often had you sat on that stool?

2    A.    Very often.  Every time I worked.

3    Q.    Would you say that that would be hundreds of

4  times?

5    A.    Yes.

6    Q.    Had you sat on the stool earlier that day?

7    A.    Yes.

8    Q.    Are you aware of anyone else who has fallen in

9  the kiosk?

10    A.    No.

11    Q.    You identified your right hand as being

12  injured.

13    A.    Yes.

14    Q.    Other than your right hand, are there any

15  other body parts that you -- that you injured that you

16  attribute to the incident?

17    A.    No.

18    Q.    Prior to the incident, had you ever injured

19  your right hand before?

20    A.    No.

21    Q.    Prior to the incident, had you ever sought

22  medical treatment for your right hand before?

23    A.    No.

24    Q.    Did the pain -- did you feel the pain right

25  away, or did it begin sometime after the fall?

Beau Hearn  *  January 18, 2022

Page 37

1      Q.   Has anyone at Kroger ever manifested an intent

2   to hurt you?

3      A.   No.

4      Q.   Do you have any reason to think that anyone at

5   Kroger wanted to hurt you?

6      A.   No.

7      Q.   Do you have any reason to think that anyone at

8   Kroger wanted the incident to occur?

9      A.   No.

10     Q.   I have looked at your discovery responses, and

11   you identified several medical providers.  I'd just like

12   to kind of go down a list of these.  Methodist

13   Richardson Medical Center, that was the first place that

14   you sought treatment, correct?

15     A.   Yes.

16     Q.   And I believe that you said that Kroger paid

17   for that?

18     A.   Yes, I believe they did.

19     Q.   Primacare Richardson, how many times did you

20   go see them?

21     A.   I don't remember.

22     Q.   What type of treatment did you receive there?

23     A.   X-rays and a brace.

24     Q.   Did Kroger pay for that?

25     A.   Yes.

Beau Hearn  *  January 18, 2022

Page 43

1       Q.   Are you able to read documents?

2       A.   Yes.

3       Q.   You understand that you were under oath today

4  just like you were in front of a judge and jury,

5  correct?

6       A.   Yes.

7       Q.   Have I treated you fairly and with courtesy?

8       A.   Yes.

9            MR. STUMBAUGH:  I'll pass the witness.

10           MR. HARTLEY:  Plaintiff reserves until

11  the time of trial.

12           (End of proceedings.)

13

14

15

16

17

18

19

20

21

22

23

24

25

App. 17

Beau Hearn  *  January 18, 2022

Page 44

1                        CHANGES AND SIGNATURE

2    WITNESS NAME: BEAU HEARN

3    DATE OF DEPOSITION: January 18, 2022

4    PAGE LINE        CHANGE              REASON

5    _____

6    _____

7    _____

8    _____

9    _____

10   _____

11   _____

12   _____

13   _____

14   _____

15   _____

16   _____

17   _____

18   _____

19   _____

20   _____

21   _____

22   _____

23   _____

24   _____

25   _____

Page 45

```
 1              I, BEAU HEARN, have read the foregoing

 2    deposition and hereby affix my signature that same is

 3    true and correct, except as noted above.

 4

 5

 6                         _____
                           BEAU HEARN

 7

 8

 9    THE STATE OF _____)

10    COUNTY OF _____)

11

12              Before me, _____, on

13    this day personally appeared BEAU HEARN, known to me (or

14    proved to me under oath or through

15    _____) (description of identity

16    card or other document) to be the person whose name is

17    subscribed to the foregoing instrument and acknowledged

18    to me that they executed the same for the purposes and

19    consideration therein expressed.

20              Given under my hand and seal of office this

21    _____ day of _____, _____.

22                         _____

23                         NOTARY PUBLIC IN AND FOR

24                         THE STATE OF _____

25                         COMMISSION EXPIRES: _____
```

Page 46

```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF TEXAS
 2                         DALLAS DIVISION

 3      BEAU HEARN,                    )
                                       )
 4                                     )
                       PLAINTIFF,      )
 5                                     )
        VS.                            ) CIVIL ACTION
 6                                     )
                                       ) NO.: 3:21-CV-01648
 7      KROGER, TEXAS, LP,             )
                                       )
 8                                     )
                                       )
 9                     DEFENDANT.      )
                                       )
10

11                  REPORTER'S CERTIFICATION

12                 DEPOSITION OF BEAU HEARN

13                     January 18, 2022

14
```

15      I, Karen Usher, Certified Shorthand Reporter in and

16 for the State of Texas, hereby certify to the following:

17      That the witness, BEAU HEARN, was duly sworn by the

18 officer and that the transcript of the oral deposition

19 is a true record of the testimony given by the witness;

20      I further certify pursuant to FRCP Rule 30 (e)(1)

21 that the signature of the deponent:

22          _X_ was requested by the deponent or a party

23 before the completion of the deposition and that the

24 signature is to be before any notary public and returned

25 within 30 days from date of receipt of the transcript.

Page 47

1  If returned, the attached Changes and Signature Page

2  contains any changes and the reasons therefore;

3         ____ was not requested by the deponent or a

4  party before the completion of the deposition.

5      That the amount of time used by each party at the

6  deposition is as follows:

7           MR. MIKE STUMBAUGH.....1 HOUR:09 MINUTES

8           MR. AUSTIN HARTLEY.....00 HOUR(S):00 MINUTE(S)

9

10     That pursuant to information given to the

11  deposition officer at the time said testimony was taken,

12  the following includes counsel for all parties of

13  record:

14      FOR THE PLAINTIFF:
        MR. AUSTIN HARTLEY
15      Hartley Law Firm
        2340 East Trinity Mills Road
16      Suite 100
        Carrollton, Texas 75006
17      (469) 289-6063
        austin@hartleylawtx.com
18

19      FOR THE DEFENDANT KROGER, TEXAS, LP:
        MR. MICHAEL STUMBAUGH
20      MS. REBECCAH TEJADA
        The Peavler Group
21      2215 Westgate Plaza
        Grapevine, Texas 76051
22      (214) 999-0550
        mstumbaugh@peavlerbriscoe.com
23

24      That $_____ is the deposition officer's

25  charges to the Defendant for preparing the original

Beau Hearn   *   January 18, 2022

Page 48

1   deposition transcript and any copies of exhibits;

2        I further certify that I am neither counsel for,

3   related to, nor employed by any of the parties or

4   attorneys in the action in which this proceeding was

5   taken, and further that I am not financially or

6   otherwise interested in the outcome of the action.

7             Certified to by me this 6th of February, 2022.

8

9

10   _____

11   MARY KAREN USHER, CSR # 5536
     Expiration: 1/31/2024

12   Firm Registration # 10278
     USHER REPORTING SERVICES

13   1326 Lochness Drive
     Allen, Texas 75013

14   (214) 755-1612
     karen@usherreporting.com

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BEAU HEARN | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO.3:21-cv-01648 |
| | § | |
| KROGER TEXAS, L.P. | § | |
| | § | |
| Defendant. | § | |

_____

**PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST REQUEST FOR ADMISSIONS**
_____

TO:    Defendant Kroger Texas, L.P., by and through its attorney of record, Kyle Briscoe, Peavler Briscoe, 2215 Westgate Plaza, Grapevine, Texas 76051.

COMES NOW, Beau Hearn, Plaintiff herein, and serves upon you his Responses to Defendant's First Request for Admission pursuant to the Federal Rules of Civil Procedure.

Respectfully submitted,

**HARTLEY LAW FIRM**

/s/ Austin F. Hartley

Austin F. Hartley
State Bar No. 24087676
Email: austin@hartleylaw.com
2340 E. Trinity Mills Rd., Ste. 100
Carrollton, Texas 75006
Telephone: (469) 289-6063
Facsimile: (972) 692-7122

*AND*

**CARSE LAW FIRM**

/s/ Tom Carse
Tom Carse
State Bar No. 00796310
Email: service@carselaw.com
6220 Campbell Road, Ste. 401
Dallas, Texas, 75248
Telephone: (972) 503-6338
Facsimile:  (972) 503-6348
**ATTORNEYS FOR PLAINTIFF**
**BEAU HEARN**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record pursuant to and in accordance with the Federal Rules of Civil Procedure on October 1, 2021.

/s/ Austin F. Hartley
Austin F. Hartley

## REQUESTS

**REQUEST FOR ADMISSION NO. 1:** Admit you are aware of no eyewitnesses to the Incident in Question.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 2:** Admit that You are aware of no eyewitnesses who saw the Stool was Defective *before* the Incident in Question.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 3:** Admit that You have *no personal knowledge* the *specific amount of time* that the Stool was Defective before the Incident in Question.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 4:** Admit that You are aware of no Photographs of the Stool that were taken *before* the Incident in Question.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 5:** Admit that You are aware of no Photographs of the Stool that were taken immediately *after* the Incident in Question.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 6:** Admit that You do not know what caused the Stool to become Defective.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 7:** Admit that You have *no personal knowledge* whether the Stool was Defective for more than 10 minutes before the Incident in Question.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 8:** Admit that You have *no personal knowledge* whether the Stool was Defective for more than 20 minutes before the Incident in Question.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 9:** Admit that You have *no personal knowledge* whether the Stool was Defective for more than 30 minutes before the Incident in Question.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 10:** Admit that You are aware of no witnesses who have *personal knowledge* whether the Stool was Defective for more than 10 minutes before the Incident in Question.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 11:** Admit that You are aware of no witnesses who have *personal knowledge* whether the Stool was Defective for more than 20 minutes before the Incident in Question.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 12:** Admit that You are aware of no witnesses who have *personal knowledge* whether the Stool was Defective for more than 30 minutes before the Incident in Question.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 13:** Admit that You are not aware of any statements by any Kroger employee (whether made before or after the Incident in Question) that he or she was aware that the Stool was Defective *before* the Incident in Question.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 14:** Admit that You have *no personal knowledge* how much time elapsed between the time a Kroger employee last inspected the Stool and the time that the Incident in Question occurred.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 15:** Admit that You have *no personal knowledge* how much time elapsed between the time a Kroger employee last inspected the Stool and the time that the Stool became Defective.

**RESPONSE:** Plaintiff objects to this request as it assumes facts in evidence, namely that the stool was ever inspected by any Kroger employee. Subject thereto, admit.

**REQUEST FOR ADMISSION NO. 16:** Admit that no Kroger employee caused the Stool to become Defective.

**RESPONSE:** Plaintiff lacks sufficient information to admit or deny this request.

**REQUEST FOR ADMISSION NO. 17:** Admit You have no evidence that a Kroger employee caused the Stool to become Defective.

**RESPONSE:** Discovery is ongoing, Plaintiff will supplement.

**REQUEST FOR ADMISSION NO. 18:** Admit that You were aware the Stool was Defective *before* the Incident in Question.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 19:** Admit that You never informed Store management that the Stool was Defective *before* the Incident in Question.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 20:** Admit that You never informed Store personnel that the Stool was Defective *before* the Incident in Question.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 21:** Admit that You are not aware of any person who informed Store management that the Stool was Defective *before* the Incident in Question.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 22:** Admit that You are not aware of any person who informed Store personnel that the Stool was Defective *before* the Incident in Question.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 23:** Admit that You never informed Store management that the Stool could not support Your weight *before* the Incident in Question.

**RESPONSE:** Plaintiff objects to this request as it assumes facts not in evidence, namely that the stool could not support Plaintiff's weight suggesting that this was the cause of Plaintiff's injury. Admissions are intended to resolve undisputed facts, not eliminate or prove claims, causes of action or defenses.

**REQUEST FOR ADMISSION NO. 24:** Admit that You never informed Store personnel that the Stool could not support Your weight *before* the Incident in Question.

**RESPONSE:** Plaintiff objects to this request as it assumes facts not in evidence, namely that the stool could not support Plaintiff's weight suggesting that this was the cause of Plaintiff's injury. Admissions are intended to resolve undisputed facts, not eliminate or prove claims, causes of action or defenses.

**REQUEST FOR ADMISSION NO. 25:** Admit that You never informed Store management that You believed the Stool could not support Your weight *before* the Incident in Question.

**RESPONSE:** Plaintiff objects to this request as it assumes facts not in evidence, namely that the stool could not support Plaintiff's weight suggesting that this was the cause of Plaintiff's injury. Admissions are intended to resolve undisputed facts, not eliminate or prove claims, causes of action or defenses.

**REQUEST FOR ADMISSION NO. 26:** Admit that You never informed Store personnel that You believed the Stool could not support Your weight *before* the Incident in Question.

**RESPONSE:** Plaintiff objects to this request as it assumes facts not in evidence, namely that the stool could not support Plaintiff's weight suggesting that this was the cause of Plaintiff's injury. Admissions are intended to resolve undisputed facts, not eliminate or prove claims, causes of action or defenses

**REQUEST FOR ADMISSION NO. 27:** Admit that Kroger had no *actual* knowledge that the Stool was Defective *before* the Incident in Question.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 28:** Admit that You have no *evidence* that Kroger had *actual* knowledge that the Stool was Defective *before* the Incident in Question.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 29:** Admit that Kroger had no *constructive* knowledge that the Stool was Defective *before* the Incident in Question.

**RESPONSE:** Plaintiff objects to this request in as much as it calls for a legal conclusion. Subject therefore, deny.

**REQUEST FOR ADMISSION NO. 30:** Admit that You have no *evidence* that Kroger had *constructive* knowledge that the Stool was Defective *before* the Incident in Question.

**RESPONSE:** Plaintiff objects to this request in as much as it calls for a legal conclusion.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Deny.

**REQUEST FOR ADMISSION NO. 31:** Admit that You sustained personal injuries to Your right thumb prior to and unrelated to the Incident in Question.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 32:** Admit that You sustained personal injuries to Your right thumb subsequent to and unrelated to the Incident in Question.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 33:** Admit You are not eligible for Medicare benefits.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 34:** Admit You are not eligible for Medicaid benefits.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 35:** Admit You have not received Medicare benefits for the injuries You sustained related to the Incident.

**RESPONSE:** Deny. Medicare paid for the emergency room visit.

**REQUEST FOR ADMISSION NO. 36:** Admit You have not received Medicaid benefits for the injuries You sustained related to the Incident.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 37:** Admit You have not applied for Social Security Disability benefits.

**RESPONSE:** Deny. However, Plaintiff is not on SSDI related to this thumb or this incident.

**REQUEST FOR ADMISSION NO. 38:** Admit You are not currently receiving Social Security Disability benefits.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 39:** Admit You have not been denied Social Security Disability benefits.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 40:** Admit You have not appealed a denial of Social Security Disability benefits.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 41:** Admit Medicare has made no conditional payment for any medical expenses or prescriptions related to injuries You sustained as a result of the Incident.

**RESPONSE:** Plaintiff will supplement.

**REQUEST FOR ADMISSION NO. 42:** Admit Medicaid has made no conditional payment for any medical expenses or prescriptions related to injuries You sustained as a result of the Incident.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 43:** Admit You are not, nor have You ever been, a Medicare beneficiary.

**RESPONSE:** Deny..

**REQUEST FOR ADMISSION NO. 44:** Admit You are not, nor have You ever been, a Medicaid beneficiary.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 45:** Admit You do not expect to become eligible for Medicare benefits within the next 30 months.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 46:** Admit You do not expect to become eligible for Medicaid benefits within the next 30 months.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 47:** Admit no liens, including liens for medical treatment by hospitals, physicians, medical providers, insurance carriers, or third-party payors of any kind, have been filed for the treatment of injuries, if any, sustained as a result of the Incident.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 48:** Admit You have filed for bankruptcy within the last three (3) years.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 49:** Admit You have been involved in bankruptcy proceedings within the last three (3) years.

**RESPONSE:** Admit.

# EXHIBIT C

Exhibit C

App. 32

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BEAU HEARN | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO.3:21-cv-01648 |
| | § | |
| KROGER TEXAS, L.P. | § | |
| | § | |
| Defendant. | § | |

_____

## PLAINTIFF'S ANSWERS AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES

_____

TO:    Defendant Kroger Texas, L.P., by and through its attorney of record, Kyle Briscoe, Peavler Briscoe, 2215 Westgate Plaza, Grapevine, Texas 76051.

COMES NOW, Beau Hearn, Plaintiff herein, and serves upon you his Answers and Objections to Defendant's First Set of Interrogatories pursuant to the Federal Rules of Civil Procedure.

Respectfully submitted,

**HARTLEY LAW FIRM**

/s/ Austin F. Hartley

Austin F. Hartley
State Bar No. 24087676
Email: austin@hartleylaw.com
2340 E. Trinity Mills Rd., Ste. 100
Carrollton, Texas 75006
Telephone: (469) 289-6063
Facsimile: (972) 692-7122

*AND*

Plaintiff's Answers and Objections to Defendant's First Set of Interrogatories
Page **1** of **8**

App. 33

**CARSE LAW FIRM**

/s/ Tom Carse
Tom Carse
State Bar No. 00796310
Email: service@carselaw.com
6220 Campbell Road, Ste. 401
Dallas, Texas, 75248
Telephone: (972) 503-6338
Facsimile:  (972) 503-6348
**ATTORNEYS FOR PLAINTIFF
BEAU HEARN**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record pursuant to and in accordance with the Federal Rules of Civil Procedure on October 1, 2021.

/s/ Austin F. Hartley
Austin F. Hartley

## INTERROGATORIES

**INTERROGATORY NO. 1:** Please describe in detail the Incident in Question, including what You were doing at the time You were injured; how You were injured (*i.e.*, what caused Your injury and what parts of Your body were injured); the location in the Store of Your injury; what, if anything, You did to report Your injury to Kroger, and when You reported Your injury to Kroger.

**ANSWER:** Plaintiff was sitting on the stool provided by Defendant in the gas station kiosk when it collapsed causing him to injure his thumb. Plaintiff reported it his manager immediately. The manager was named Terry Taylor Plaintiff believes.

**INTERROGATORY NO. 2:** Please describe any conversations You have had with Defendant or any witness or employee of Defendants that You believe support Your claim that Defendant was negligent. Include in Your answer each witness's identity, the date of the conversation(s), the persons present, what You said to each witness, and what each witness said to You.

**ANSWER:** Plaintiff objects on the basis that this request is overly broad and overly burdensome and seeks Plaintiff to marshal his evidence. Interrogatories are intended to elicit basic facts of the case not lay out every detail of a party's case. Defendant has asked Plaintiff to set forth he substance, date and identity of any conversations constituting evidence that Defendant was negligent.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff cannot recall the dates and details of all relevant conversations. However, he did ask his supervisor Pam Comptom several times about getting a new stool prior to the incident. Plaintiff is also aware of other Kroger employees who knew the stool was damaged: Terry Taylor and Taylor Wade. Other employees Plaintiff believes were aware and/or may have reported the damaged stool to management prior to the incident are as follows: Scoey Cash, Carl Trotman, and Chand Shaikh.

**INTERROGATORY NO. 3:** Please set forth the name and address of each doctor, hospital, or other health care provider (including pharmacies) by whom You have been treated *for any illness or injury* (physical or mental) or have received prescription medication from five (5) years before the Incident in Question through the present, including up to the day of trial.

**ANSWER:** Plaintiff objects on the basis that this request is overly broad in scope and seeks irrelevant information. Specifically, Plaintiff has only alleged injury to his thumb. The request is not limited to the parts of Plaintiff's body injured in the incident.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: None as to Plaintiff's thumb injured in the incident.

Plaintiff's Answers and Objections to Defendant's First Set of Interrogatories

**INTERROGATORY NO. 4:** Please identify Yourself by providing Your full name, as well as any other name by which You have been known (including Your maiden name and any aliases), date of birth, place of birth, Social Security Number, driver's license state and number, present residence address, present business address, and residence addresses for the past five (5) years.

**ANSWER:** Plaintiff objects to this Request as Plaintiff's full Social Security number is not relevant, not reasonably calculated to lead to the discovery of admissible evidence, immaterial, and is beyond the scope of discovery and the issues raised in this matter. Plaintiff further objects to this Request as it is an unwarranted invasion of Plaintiff's privacy rights without justification or adequate protections against identity theft. Plaintiff further objects to this Request as it violates Tex. Bus. & Com. Code §35.581, which prohibits disclosure of Social Security numbers in the absence of a hearing and court protective order. Subject to and without waiving the foregoing objections, the last four digits of Plaintiff's Social Security number are 4139.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Beau Hearn, 03/01/1964, Conway, AK, TX DL 34287504, 419 Royal Crest Drive, Richardson, Texas 75081, N/A as to business address, Plaintiff's prior address was 901 East Clay Street, Bowie, Texas 76230.

**INTERROGATORY NO. 5:** If You are aware of any other incident, event, claim or lawsuit which You contend arises out of the same or a substantially similar factual circumstance as the Incident in Question, please describe each incident, event, claim or lawsuit, including in Your description the details of each incident, event, claim or lawsuit; the parties involved in each; and the court in which any lawsuit is filed. This Interrogatory specifically seeks identification of any so called "similar incident" You may attempt to offer or use in any manner at the trial of this case.

**ANSWER:** Discovery is going, Plaintiff will supplement.

**INTERROGATORY NO. 6:** Please describe in detail everything You did beginning four hours before the Incident in Question until four hours after the Incident in Question, including what job function You were performing at the time of the Incident in Question, what time You came to work the day of the Incident in Question; and what time You left work on the day of the Incident in Question.

**ANSWER:** Plaintiff objects on the basis that this interrogatory is overly broad and overly burdensome, and incapable of being completely answered. Specifically, Plaintiff does not recall each and every thing he did in the four hours proceeding the incident.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: In general, Plaintiff got up and went to work. He believes he arrived at 3:00 p.m. He was performing his assigned job duties in the immediate time preceding the incident. Plaintiff does not recall the exact time he left work the day of the incident in order to go to the Emergency Room around 6:15 p.m.

Plaintiff's Answers and Objections to Defendant's First Set of Interrogatories

**INTERROGATORY NO. 7:** Aside from Defendant, do You believe any other person, entity or product caused or contributed in any way to the Incident in Question and/or Your alleged damages? If so, identify each such person, entity or product and state in what way each such person, entity or product caused or contributed to the Incident and/or Your alleged damages.

**ANSWER:** None.

**INTERROGATORY NO. 8:** Have You ever made any other claim against any other person or company (including an insurance company) for injuries? If so, please describe the date and nature of each such injury and describe the outcome of each such claim.

**ANSWER:** Plaintiff objects to this request on the basis that it is not limited in time or scope. Furthermore, it requests irrelevant information. Specifically, there are no time limits placed on the interrogatory and the request is not limited to the same parts of Plaintiff's body injured in this incident (thumb).

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff has not filed any type of claim with respect to his thumb in this past. Plaintiff has not filed any type of claim for injury in the five years preceding this incident.

**INTERROGATORY NO. 9:** Do You contend Kroger was aware the Stool was Defective prior to the Incident in Question? If Your answer is "yes," please state the factual and legal bases for Your contention(s), including in Your answer how long the Stool was Defective prior to the Incident in Question and who, if anyone, was aware of such condition.

**ANSWER:** Yes. Plaintiff advised his manager Pam Comptom of the broken stool prior to the incident several times and was told she would she had spoken to corporate about it and nothing was being done. He does not remember the date and time of this conversation. He also believes other employees may have advised management of the issues. The stool was defective for at least 4 or so months (when Plaintiff's started working at Kroger).

**INTERROGATORY NO. 10:** Please state the factual and legal basis for Your contention that Defendant acted negligently. Include in Your answer a description of the procedures that You contend Kroger should have undergone, but failed to undergo, and explain how such procedures would have prevented Your alleged injury.

**ANSWER:** Defendant should have replaced the stool after it was put on notice of it.

**INTERROGATORY NO. 11:** Are You seeking to recover as part of this lawsuit any benefits that You believe You have not received but are entitled to under the Kroger Occupational Injury or Disease Benefits Plan? If so, please describe what benefits You

are seeking that You have not received but believe You are entitled to, and please state whether You have received an adverse benefits determination regarding those benefits.

**ANSWER:** To Plaintiff's knowledge, Defendant is self-insured. He has not received an adverse benefits determination. Plaintiff seeks past and future pain and suffering, emotional distress and disfigurement. Additionally, Plaintiff seeks the cost of any future surgeries as well as lost time from work as a result of the incident.

**INTERROGATORY NO. 12:** Please list all medical health, disability, income replacement, debt-deferment, or other policies or plans (including governmental) under which You have had coverage or benefits that in any way involve Your health from five (5) years before the Incident in Question through the present, including up to the day of trial. Please include the name, address and phone number of the insurance carrier(s) and/or other provider(s) of coverage or benefits, the policy or reference number(s), and the policyholder or benefit recipient's name.

**ANSWER:** Plaintiff is on Medicare and Social Security Disability for degenerative spine problems. He has been on SSDI/Medicare since 2013.  Plaintiff's right thumb in no way shape or form makes the basis for these benefits. Plaintiff does not possess the other requested information.

**INTERROGATORY NO. 13:** Please state whether You have been involved in any prior and/or subsequent accidents or incidents, including but not limited to, motor vehicle accidents, sports injuries, work-related accidents or injuries, slips, trips, slip-and-falls, trip-and-falls, etc. If so, please state the following for each: a. the time and place of the incident;

b. the extent and nature of any injuries;

c. whether a claim or lawsuit was filed and the disposition of any such claim or lawsuit; and

d. identify the medical providers You saw for Your injuries.

**ANSWER:** Plaintiff objects to this request on the basis that it is not limited in time or scope. Furthermore, it requests irrelevant information. Specifically, there are no time limits placed on the interrogatory and the request is not limited to the same parts of Plaintiff's body injured in this incident (thumb).

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff has not filed any type of claim with respect to his thumb in this past. Plaintiff has not filed any type of claim for injury in the five years preceding this incident. Plaintiff has not been involved in any subsequent accidents or injuries.

**INTERROGATORY NO. 14:** Has any physician specifically stated to You that You will need future medical care or treatment for the injuries or damages You are claiming in this lawsuit? If so, please state the name, address, and telephone number of each such

Plaintiff's Answers and Objections to Defendant's First Set of Interrogatories

physician and describe the medical care or treatment each such physician has stated You will require in the future.

**ANSWER:** Yes, Dr. Scott Farley of Comprehensive Spine Center. Plaintiff will supplement with any documents detailing the future treatment Plaintiff will need. Plaintiff has also been advised that he will require surgery in the future by Allstar Orthopedics and Ortho Texas.

**INTERROGATORY NO. 15:** For each medical or health care provider who has treated or seen You, including up to the day of trial, for injuries You attribute to the Incident in Question, please state:

a.     the total amount of services that each provider billed;

b.     the total amount actually paid to each provider by You, an insurance company, or by any other person or entity on Your behalf;

c.     the total amount of each bill that was discounted, charged off, adjusted, or otherwise reduced and no longer owed by You should You collect nothing in this lawsuit; and

d.      the identity of the person or entity making such payment(s).

**ANSWER:** Plaintiff directs Defendant to his medical and billing records that have been or will be produced in this proceeding.

**INTERROGATORY NO. 16:** Please identify (by lien holder and amount) all liens filed by any medical or health care provider who has treated or seen You for injuries You attribute to the Incident at issue.

**ANSWER:** Plaintiff has not been placed on notice of any filed liens related to the incident. Medicare did pay for Plaintiff's emergency room treatment and Plaintiff will supplement with this amount.

**INTERROGATORY NO. 17:** Please describe all efforts You have taken to mitigate Your lost-wages damages, including (but not limited to) a description of what, if anything, You have done to look for work, the identities of potential employers You have contacted, the names of any employment agencies You have visited, etc.

**ANSWER:** Plaintiff continues to work for Defendant because he must earn money to survive. He has done his best to make do with the limitations and pain caused by Defendant's negligence.

**INTERROGATORY NO. 18:** Please describe all jobs You have applied for and/or worked at since the date of the Incident. Please include in Your description the name, address,

and phone number of each such prospective employer, the date You sought and/or began such employment, the amount of pay, the type of work, and the hours worked.

**ANSWER:** Plaintiff continues to work for Kroger in the same position.

**INTERROGATORY NO. 19:** If You have ever been arrested, please set forth the offense for which the arrest was made, the county and state in which the arrest occurred, the final disposition of the charges and the date of the final disposition for each such arrest.

**ANSWER:** Plaintiff objects to this Interrogatory to the extent it exceeds the spirit and letter of the Federal Rules of Evidence. Specifically, it is not limited to convictions for felonies or crimes of moral turpitude in the prior 10 years.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Within the confines of the Federal Rules of Evidence, none.

**INTERROGATORY NO. 20:** Please describe the injuries You claim to have suffered as a result of the Incident in Question:

    a.    the part of Your body injured;

    b.    the treatment You received;

    c.    the medical providers seen for this injury;

    d.    whether You have ever previously injured this part of Your body;

    e.    what future treatment, if any, is needed for this injury; and

    f.    whether You are still having problems with this injury today.

**ANSWER:**

    a.    Plaintiff's right thumb was injured.

    b.    Plaintiff has received evaluation, orthopedic care, injections and radiology. Plaintiff has been advised he will require surgery.

    c.    Plaintiff directs Defendant to his initial disclosures.

    d.    No.

    e.    Plaintiff will be receiving an injection and has been told he needs surgery.

    d.    Yes.

Plaintiff's Answers and Objections to Defendant's First Set of Interrogatories

# EXHIBIT D


### Methodist
#### HEALTH SYSTEM

## AFFIDAVIT OF MEDICAL RECORDS

State of Texas
County of Dallas

Records pertaining to: *Beau Hearn*

Before me, the undersigned authority, personally appeared *Deborah Samples*
Who, being by me duly sworn, deposed as follows:

My name is *Deborah Samples*_____. I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

I am the custodian of records for METHODIST HEALTH SYSTEM (MHS includes Methodist Charlton, Methodist Dallas, Methodist Mansfield, and Methodist Richardson). Attached hereto are *1 Radiology 259 pages* pages of records from METHODIST HEALTH SYSTEM (MCMC, MDMC, MMMC or MRMC). These said *2 CD's* pages of records are kept by METHODIST HEALTH SYSTEM (MCMC, MDMC, MMMC and MRMC) in the regular course of business, and it was the regular course of business of METHODIST HEALTH SYSTEM for an employee or representative of METHODIST HEALTH SYSTEM, with knowledge of the act, event, condition, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original of exact duplicates of the original. It was the regular course of business also for METHODIST HEALTH SYSTEM to keep, retain or maintain records such as the attached *2 CD's* pages of records.

The records attached hereto are exact copies of originals and nothing has been removed from the original files before making copies. The attached records include all hospital/medical records contained in the medical chart on the named patient for the referenced admission or date.

*Deborah Samples*
Affiant

SWORN TO AND SUBSCRIBED before me on the *6th* day of *October*,
20 *20*.

LORRI M. ROQUEMORE
My Notary ID # 2953922
Expires May 12, 2021

*Lorri M. Roquemore*
Notary Public in and for the State of Texas

**App. 42**



**HEALTH SYSTEM**

MHS SERVICE AREA
Patient Demographics

Hearn, Beau Joseph
MRN: MHD3005014, DOB: ████████, Sex: M

**Patient Demographics**

| Name | Patient ID | SSN | Gender Identity | Birth Date |
|---|---|---|---|---|
| Hearn, Beau Joseph | ████ | ██ | ██ | ████ |

| Address | Phone | Email |
|---|---|---|
| ████ | ████ | ████ |

| Reg Status | PCP |
|---|---|
| Verified | Favroth, Daphne L., MD972-669-8400 |

**App. 43**



MHS SERVICE AREA
Inpatient Record

Hearn, Beau Joseph
MRN: MHD3005014, DOB: ▮▮▮▮, Sex: M
Adm: 6/15/2020, D/C: 6/15/2020

---

**Diagnosis Information**

| Primary Visit Diagnosis: | Sprain of metacarpophalangeal (MCP) joint of right thumb, initial encounter [S63.641A] |
|---|---|
| Principal Problem: | None found |

| Visit Diagnoses | Problem List | ADT Coded Diagnoses | ADT Free Text Diagnoses |
|---|---|---|---|
| Sprain of metacarpophalangeal (MCP) joint of right thumb, initial encounter [S63.641A]<br>Contusion of left forearm, initial encounter [S50.12XA] | None found | None found | None found |

**Final Diagnoses (ICD-10-CM)**

| Code | Description | POA | CC | HAC | Affects DRG |
|---|---|---|---|---|---|
| S63.641A  **[Principal]** | Sprain of metacarpophalangeal joint of right thumb, initial encounter | | | | |
| M19.041 | <mark>Primary osteoarthritis, right hand</mark> | | | | |
| S50.12XA | Contusion of left forearm, initial encounter | | | | |
| I10 | ███████████████████████ | | | | |
| Z87.891 | ███████████████████████ | | | | |

**Events**

**ED Arrival at 6/15/2020 2156**

  Unit: Methodist Richardson Medical Center Emergency Department

**Admission at 6/15/2020 2204**

  Unit: Methodist Richardson Medical Center
  Emergency Department          Room: 14B                          Bed: 14B
  Patient class: Emergency       Service: Emergency Medicine

**ED Roomed at 6/15/2020 2204**

  Unit: Methodist Richardson Medical Center Emergency Department

**Discharge at 6/15/2020 2312**

  Unit: Methodist Richardson Medical Center
  Emergency Department          Room: 14B                          Bed: 14B
  Patient class: Emergency       Service: Emergency Medicine



**App. 44**

MHS SERVICE AREA
Inpatient Record

Hearn, Beau Joseph
MRN: MHD3005014, ▮▮▮▮▮▮▮, Sex: M
Adm: 6/15/2020, D/C: 6/15/2020

**Surgical as of 6/15/2020 (continued)**



MHS SERVICE AREA
Inpatient Record

Hearn, Beau Joseph
MRN: MHD3005014, DOB: ████████, Sex: M
Adm: 6/15/2020, D/C: 6/15/2020



**Neuro Screw**

**Other Implant**

**Methodist**
HEALTH SYSTEM

MHS SERVICE AREA
Inpatient Record

Hearn, Beau Joseph
MRN: MHD3005014, DOB: ███████, Sex: M
Adm: 6/15/2020, D/C: 6/15/2020

**ED Provider Notes - ED Notes**

ED Provider Notes by Gagnon, Garry F., MD at 06/15/20 2229                                              Version 1 of 1

Author: Gagnon, Garry F., MD          Service: —                          Author Type: Physician
Filed: 06/16/20 0025                 Date of Service: 06/15/20 2229       Status: Signed
Editor: Gagnon, Garry F., MD (Physician)

**MRMC EMERGENCY Department**
**Beau Joseph Hearn**
Age: ██ y.o. DOB: ███████

Visit Date: 6/15/2020
MRN: MHD3005014

**History of Present Illness:**

**Chief Complaint:** Fall

**All necessary precautions were instituted by the provider during evaluation, including:**

**Provider was wearing: n95 respirator, protective eyewear, and gloves**

**The patient was wearing a mask.**


History provided by: **Patient**
Language interpreter used: **No**
Trauma
Mechanism of injury: **fall**
Injury location: **hand and shoulder/arm**
Injury location detail: **L forearm** and **R hand and R fingers**
Incident location: **at work**
Time since incident: **7 hours (prior to ED arrival)**
Arrived directly from scene: **no**

Fall:
      Fall occurred: **from a stool**
      Point of impact: **hands**
      Entrapped after fall: **no**

Protective equipment:
      **None**
      Suspicion of drug use: **no**

10:29 PM: Beau Joseph Hearn is a ██ y.o. male who presents to the Emergency Department for evaluation of arm pain and hand pain s/p fall approximately 7 hours prior to ED arrival. Patient reports he was sitting on a stool at work when one of the legs broke and he fell. He states his point of impact was his right hand and left forearm. Patient complains of moderate, constant, aching, and non-radiating pain to his right thumb and hand and his left forearm. He reports no modifying factors. Patient states having additional swelling of his left forearm.

PCP: Favroth, Daphne L., MD

Methodist
H E A L T H   S Y S T E M

MHS SERVICE AREA
Inpatient Record

Hearn, Beau Joseph
MRN: MHD3005014, DOB: ███████4, Sex: M
Adm: 6/15/2020, D/C: 6/15/2020

**ED Provider Notes - ED Notes (continued)**

Version 1 of 1



**App. 49**

MHS SERVICE AREA
Inpatient Record

Hearn, Beau Joseph
MRN: MHD3005014, DOB: ███████, Sex: M
Adm: 6/15/2020, D/C: 6/15/2020

---

**ED Provider Notes - ED Notes (continued)**

ED Provider Notes by Gagnon, Garry F., MD at 06/15/20 2229 (continued)                    Version 1 of 1




## Review of Systems:

Review of Systems
Constitutional: Negative.
HENT: Negative.
Eyes: Negative.
Respiratory: Negative.
Cardiovascular: Negative.
Gastrointestinal: Negative.
Endocrine: Negative.
Genitourinary: Negative.
Musculoskeletal: Negative.
    **Positive for: left forearm pain and right hand pain.**
Skin: Negative.
Allergic/Immunologic: Negative.
Neurological: Negative.
Hematological: Negative.
Psychiatric/Behavioral: Negative.
All other systems reviewed and are negative.

## Vital Signs:



## Physical Exam:

**Physical Exam**
Vitals signs and nursing note reviewed.
<u>Constitutional:</u>
    Appearance: He is well-developed.



MHS SERVICE AREA
Inpatient Record

Hearn, Beau Joseph
MRN: MHD3005014, DOB: 3/1/1964, Sex: M
Adm: 6/15/2020, D/C: 6/15/2020

**ED Provider Notes - ED Notes (continued)**

ED Provider Notes by Gagnon, Garry F., MD at 06/15/20 2229 (continued)                                  Version 1 of 1

<u>HENT</u>:
  Head: Normocephalic and atraumatic.
  Right Ear: Hearing normal.
  Left Ear: Hearing normal.
<u>Eyes</u>:
  Pupils: Pupils are equal, round, and reactive to light.
<u>Neck</u>:
  Musculoskeletal: Normal range of motion.
<u>Musculoskeletal</u>: Normal range of motion.
  General: No tenderness.
  Right wrist: He exhibits no tenderness.
  Comments: **Patient exhibits no pain with range of motion or palpation of the right wrist. No snuffbox tenderness. Exhibits pain and swelling of the mcp joint of the right thumb. Hematoma noted on the proximal left ulna. No radial head tenderness. No pain of the left wrist or left shoulder.**
<u>Skin</u>:
  General: Skin is warm and dry.
  Findings: No rash.
<u>Neurological</u>:
  Mental Status: He is alert and oriented to person, place, and time.
  Cranial Nerves: No cranial nerve deficit.
  Sensory: No sensory deficit.
<u>Psychiatric</u>:
  Behavior: Behavior normal.
  Thought Content: Thought content normal.
  Judgment: Judgment normal.



**Procedures:**

**ED Labs & Radiology**

**App. 51**

**Methodist**

**HEALTH SYSTEM**

MHS SERVICE AREA
Inpatient Record

Hearn, Beau Joseph
MRN: MHD3005014, DOB: ██████, Sex: M
Adm: 6/15/2020, D/C: 6/15/2020

---

**ED Provider Notes - ED Notes (continued)**

ED Provider Notes by Gagnon, Garry F., MD at 06/15/20 2229 (continued)                    Version 1 of 1

**Radiology**:

X-ray Forearm 2 View Left
**Final Result**
Findings/Impression:

No fracture or dislocation is seen.

End of Report.

RL: 6200

Dictated by: Wrenn Wooten, MD
Dictated date/time: 6/15/2020 10:26 PM CDT
Electronically Signed by: Wrenn Wooten, MD
Electronically Signed date/time: 6/15/2020 10:26 PM
CDT

X-ray Hand 3+ View Right
**Final Result**
Findings/Impression:

Moderate osteoarthritis of the first carpometacarpal
joint.

Moderate diffuse interphalangeal joint osteoarthritis.

Old healed boxer's fracture.

Tiny ossific densities on the lateral view dorsal to the
mid wrist may be related to dystrophic ossification
versus trauma of indeterminate age. Clinical
correlation recommended. If there is persistent clinical
concern dedicated wrist radiographs are available.

End of Report.

RL: 6200
AFC: 99053

Dictated by: Wrenn Wooten, MD
Dictated date/time: 6/15/2020 10:26 PM CDT
Electronically Signed by: Wrenn Wooten, MD

---

**App. 52**

# EXHIBIT E

## Hearn, Beau

MRN: 110031650

**Established Patient**  Provider: Dustin L Ray, MD (Plastic Surgery)
1/4/2022  Primary diagnosis: Localized primary osteoarthritis of right hand
DMC HAND CLINIC  Reason for Visit: Follow-up; Referred by Dustin L Ray, MD

## Progress Notes

Dustin L Ray, MD (Physician) • Plastic Surgery

**Progress Notes**

**Name:** Beau Hearn  **MRN:** ███
**DOB:** ███  **Acct:** ███
**Age:** ███ y.o.  **Admit Date:** 1/4/2022  1:26 PM
**Sex:** male  **Attending:** Dustin L Ray, MD

### Chief Complaint

Patient presents with
- Follow-up
  *Right Thumb Pain*

| Reason for today's visit |
|---|

LOP (Comprehensive spine)
DOI: 06/15/2020

Patient presents today after steroid injection for trigger 2 weeks ago. Pt reports no improvement with his thumb pain. Today patient reports 8 out of 10, constant, sharp pain of his right thumb. Patient reports that he also received a steroid injection a few weeks ago into the MCP joint of his right thumb.  Patient reports that this did not help him very much either.

Patient injured his right thumb after falling from a sitting position while at work.  This happened on June 15, 2020.

Old X-rays of patient's right thumb MCP joint showed osteoarthritis.



| Medical History |
|---|



| Surgical History |
|---|

Printed by Cyndi Jaramillo at 2/1/22 9:59 AM  Page 1 of 5

**App. 54**

## Family History

## Social History

## Allergies

## Review of Systems

| | |
|---|---|
| **Neck:** | Normal range of motion, supple. No tenderness, no JVD, no lymphadenopathy. |
| **Respiratory:** | Rate normal. No respiratory distress. No retractions. Normal air flow. No wheezes, rhonchi, or rales. |
| **Heart:** | Regular rate and rhythm, normal S1,S2, no gallops, no murmurs no rubs. |
| **Abdomen:** | Soft. No tenderness . No guarding. No rebound. |
| **GI:** | Bowel sounds normal, soft, no tenderness, no masses, no pulsatile masses |
| **Extremities:** | Right

INSPECTION
Right: No discoloration. No erythema. No trophic changes. No scars/wounds. No swelling. No muscle atrophy. No asymmetry. No angulation. No rotational deformity. No previous amputation.


PALPATION
Right: No masses. Warm to touch.  Positive thumb A1 pulley and thumb MCP joint tenderness. No crepitus. No clicking or snapping.


ROM
Right hand fingers: MCP: 0° ext to 85° of flex PIP: 0° ext to 110° of flex DIP: 0° ext to 65° of flex.
Right Thumb: MCP: 0° ext to 85° of flex IP: 0° ext to 85°of flex.
Wrist: 60° flex to 60° ext; 20° radial deviation to 30° ulnar deviation.
Forearm: Supination is 75° and pronation is 85°

Neurovascular
Right: 2 pt discrim 8 mm
2 + radial artery & ulnar artery pulses
Cap refill less than 2 seconds

Special Tests
Right: Negative ulna Fovea Sign. Negative Cozen's Test. Negative grind test. Negative Finkelstein's Test. Negative scaphoid shift test. Negative lunotriquetral ballottement test. No midcarpal instability. Negative Tinel's over carpal tunnel. Negative Phalen's. Negative Froment's sign. Negative Wartenberg's sign. |

**Imaging:**

No results found.


**Labs:**

No results found for this or any previous visit (from the past 336 hour(s)).

| Assessment |
|---|

**1.   Localized primary osteoarthritis of right hand**
2.    Trigger thumb of right hand

Status post fall

| Plan |
|---|

1. Repeat right thumb x-rays and also ordered CT scan of right thumb (Patient unable to get MRI because of nerve stimulator device)
2. F/u 1 week

**Author**: Dustin L Ray, MD

Electronically Signed by: Dustin L Ray, MD

## Additional Documentation

Vitals:          Temp **96.1 °F (35.6 °C)** (Tympanic) Resp **20**

Encounter Info:  Billing Info, History, Allergies, Detailed Report

## Orders Placed

CT Upper Extremity Right without Contrast
X-ray Hand 3+ Views Right

## Medication Changes
As of 1/4/2022  1:57 PM

None

## Medication List at End of Visit
As of 1/4/2022  1:57 PM

|  | Refills | Start Date | End Date |
|---|---|---|---|
| ████████████ |  |  |  |
| ████████████ |  |  |  |

## Visit Diagnoses

Primary: **Localized primary osteoarthritis of right hand** M19.041

**App. 57**

Trigger thumb of right hand M65.311

**App. 58**